BENJAMIN P. TAGUE, Plaintiff-Appellee and Cross-Appellant, v. MOLI-TOR MOTOR COMPANY, d/b/a Heritage Lincoln Mercury of Collinsville, Defendant-Appellant and Cross-Appellee.

Fifth District   No. 5—84—0472

Opinion filed December 27, 1985.

314

JONES, J., dissenting.

William C. Evers III, of Collinsville, for appellant.

Storment & Read, of Belleville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Molitor Motor Company, Inc., d/b/a Heritage Lincoln Mercury of Collinsville, defendant, appeals from a judgment of the circuit court of Madison County entered on a jury verdict in favor of Benjamin Tague, plaintiff. Plaintiff's two count amended complaint alleged that defendant had committed common law fraud and had violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*) by altering the odometer reading and disconnecting a brake warning light on an automobile ultimately purchased from defendant by plaintiff. The jury returned a verdict for plaintiff in the amount of $1,125 for actual damages, and also assessed punitive damages of $17,000 against defendant. On direct appeal, defendant raises numerous issues for our consideration. Plaintiff has also filed a cross-appeal. For the reasons which follow, we affirm the judgment of the circuit court, and remand for calculation of plaintiff's costs and entry of judgment in the amount of those costs against defendant.

Initially, defendant asserts that the court erred in not granting a mistrial when plaintiff's counsel asked plaintiff, who was wearing his military uniform, whether he had recently participated in the United States invasion of Grenada. While this question was obviously not relevant to the issues being tried, it is well settled that the matter of declaring a mistrial rests in the sound discretion of the trial court. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 359, 366 N.E.2d 327.) Here, the single question regarding plaintiff's service in Grenada was asked during the course of a lengthy trial, and was not of such character as would significantly influence the jury. Accordingly, we cannot say that the trial court abused its discretion in failing to declare a mistrial.

Defendant next contends that the court erred in failing to di-

rect a verdict in its favor on both counts of the complaint. With respect to count I, defendant argues that the evidence established that plaintiff was the victim of a private wrong not covered by the Consumer Fraud and Deceptive Business Practices Act (hereinafter Act). This contention is without merit, as sections 2 and 10a of the Act permit an aggrieved party to bring an action for damages resulting from the "use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." (Ill. Rev. Stat. 1983, ch. 121½, pars. 262, 270a.) Moreover, acts of the type complained of here may constitute violations of the Act. (*Cf. People ex rel. Scott v. Larance* (1982), 105 Ill. App. 3d 171, 434 N.E.2d 5 (dismissal of complaint alleging violation of the Act by private party who misrepresented mileage of vehicle party traded is held erroneous).)

■■ ■ Defendant's argument that count II should not have been submitted to the jury is also unpersuasive. Six elements must be proved by clear and convincing evidence in an action based upon fraud: (1) the misrepresentation must be of a statement of fact; (2) it must be made for the purpose of influencing the other party to act; (3) it must be untrue; (4) the party making the statement must know or believe it to be untrue; (5) the person to whom it is made must believe and rely on the statement; and (6) the statement must be material. (*National Republic Bank v. National Homes Construction Corp.* (1978), 63 Ill. App. 3d 920, 924, 381 N.E.2d 15.) Here, plaintiff offered evidence establishing that the automobile in question had 85,000 miles on the odometer when defendant took it in trade, that it had only 40,000 miles on the odometer when defendant sold it to plaintiff approximately three months later, and that a conscious effort was required to change the odometer reading. Plaintiff also testified that, when he test drove the car, a dashboard warning light relating to the brakes came` on, that defendant's employees told him the brakes had been fixed before he took delivery of the car, and that he subsequently discovered that the brake sensors had been disconnected, thereby rendering the warning light inoperative. Plaintiff's testimony also established his reliance on defendant's representations that the car was a "low mileage" vehicle and that the brakes had been fixed, and we are unable to say that the court erred in not granting defendant's motion for a directed verdict on the fraud count.

■■ Defendant's next assignment of error concerns the jury instructions. Initially in this regard, defendant asserts that the court erred in not giving a non-IPI instruction tendered by defendant. This instruction stated that "[t]he Consumer Fraud and Deceptive Prac-

tices Act prohibits deception, rather than error." Scrutiny of the record reveals, however, that the jury was instructed that plaintiff was required to prove under count I that, among other things, "the defendant, by its agents, servants and employees, used a deception, fraud, false pretense and misrepresentation of a material fact." The criterion for determining the adequacy of jury instructions is whether, taken as a whole and in series, they fairly, fully, and comprehensively apprise the jury as to applicable legal principles. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 929, 419 N.E.2d 578.) Here, the instruction given to the jury made it clear what plaintiff was required to prove to prevail under the Act, and we cannot say that the court's failure to give defendant's tendered instruction operated to the prejudice of defendant. While defendant also asserts that the court erred in giving that part of plaintiff's instruction No. 10 which stated that plaintiff, to prevail on the fraud count, had the burden of proving that defendant misrepresented material facts with knowledge of their falsity "or with reckless disregard for the truth," the record reveals that defendant never objected to this instruction on this ground. An objection to an instruction must be made with sufficient particularity to apprise the trial court of the identity of the error relied on (*Mathis v. Burlington Northern, Inc.* (1978), 67 Ill. App. 3d 1009, 1012, 385 N.E.2d 780), and defendant's failure to object at trial to the language now complained of constitutes a waiver of this issue for purposes of review. *Bean v. Norfolk & Western Ry. Co.* (1980), 84 Ill. App.3 d 395, 410, 405 N.E.2d 418.

■■ ■ The final contention raised by defendant on the direct appeal concerns the punitive damages award. Defendant contends that such award is improper in this case, or, alternatively, that the amount of punitive damages assessed by the jury should be reduced. It has long been established in Illinois that punitive or exemplary damages may be awarded "when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others [citation]. Where punitive damages may be assessed, they are allowed in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future." (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353.) While punitive damages are not favored in the law, and courts must take caution to insure that such damages are not improperly or unwisely awarded (74 Ill. 2d 172, 188, 384 N.E.2d 353), the record here fully supports the punitive damage award made by the jury. Taken as a whole, the record unequivocally establishes a

pattern of bad faith on the part of defendant during its dealings with plaintiff. There is nothing to contradict the testimony that alteration of the car's odometer required a conscious effort, that the car had 85,000 miles on it when it was traded in to defendant, and that the odometer indicated that the car only had 40,000 miles on it when plaintiff bought it. Even more importantly, defendant's actions in deactivating the brake warning light of the car exposed plaintiff and other innocent persons to the dangers attendant to unanticipated brake failure; indeed, plaintiff testified that the brakes failed and he ran through a stop sign on his way home after purchasing the car. The record is replete with instances of defendant's disregard to the rights of plaintiff, and we see no basis for upsetting the jury's award of punitive damages. While defendant points out that the punitive damages greatly exceed the actual damages awarded, the amount of punitive damages does not have to be proportional to the amount of compensatory damages, and a reviewing court will only reduce the punitive damage award when it is clearly excessive. (*Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 711, 450 N.E.2d 1199.) In this instance, the amount awarded by the jury was entirely reasonable, since, because of the relatively small amount of actual damages incurred by plaintiff, a punitive damage award more closely approximating the actual damage award would do little or nothing to deter defendant or others from engaging in the same reprehensible pattern of conduct in the future. Accordingly, we are unable to say, given the evidence of defendant's conduct and net worth, that the punitive damage award of $17,000 is excessive.

In his cross-appeal, plaintiff argues that the court erred in not awarding him attorney fees and costs. With respect to costs, section 5—108 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 5—108) specifically provides that, when a plaintiff recovers damages personal to him in an underlying action, "judgment shall be entered in favor of the plaintiff to recover costs against the defendant." Accordingly, this cause must be remanded to the trial court for determination of the amount of plaintiff's costs and assessment of judgment in that amount against defendant. With respect to attorney fees, section 10a(c) of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 270a(c)) provides that the court may award attorney fees to the prevailing party. Words used in a statute are to be construed in accordance with their ordinary meaning, and the word "may" is usually employed as implying permissive or discretional as opposed to mandatory action or conduct. (*Rankin v. Rankin* (1944), 322 Ill. App. 90, 92, 54 N.E.2d 58.) It thus

appears that the determination of whether attorney fees should be awarded in an action brought under the Act rests in the sound discretion of the trial court, and we are unable to say that the court abused its discretion in not awarding such fees here.

For the foregoing reasons, the judgment of the circuit court is affirmed. The cause is remanded to the circuit court, which is directed to determine the appropriate amount of plaintiff's costs and to enter judgment in that amount for plaintiff and against defendant.

Affirmed and remanded with directions.

KASSERMAN, P.J., concurs.

JUSTICE JONES, dissenting:

When plaintiff's attorney asked plaintiff on direct examination whether he had participated in the recent invasion of Grenada, it constituted a calculated and deliberate attempt to evoke sympathy for plaintiff in the eyes of the jury. The plaintiff was dressed in his military uniform as he had a perfect right to be since he was on active duty with the armed forces, and had just returned from participation in the then-recent invasion of Grenada by the United States Armed Forces, an action highly favored by the great majority of the citizens of this country. In this action for fraud in the sale of an automobile, it would be completely and totally irrelevant to any issue in the case whether the plaintiff had participated in the invasion of Grenada. Such information had no probative value in the case, and the information could only be misused by the jury, as it obviously was. Plaintiff's attorney manifestly was aware of the impropriety of his question, and his using it in the manner he did constitutes an abuse of the judicial system and should not be sanctioned by this or any other court. The trial court sustained defendant's objection to the question and later, in chambers and out of the presence of the jury, termed it "a cheap shot." That it was. The trial court refused defendant's motion for a mistrial because of the question for the reason that plaintiff had traveled to the trial from the State of Washington. Such reason is legally insufficient in law to excuse such a deliberate act of his own attorney.

The trial court's error in refusing to grant a mistrial over the "Grenada" question is doubtless reflected in the verdict for punitive damages returned by the jury. That award was in the amount of $17,000, a sum over 15 times the amount of the compensatory verdict, 3.7 times the amount plaintiff agreed to pay for the car, and 10% of the value of the defendant automobile agency. The amount of

the punitive damages is further exacerbated by the fact that, at the time of the trial, the plaintiff *had driven the car in question 19,000 miles and still got to keep the car*.

These factors place the punitive damages award in this case far afield from the principles and purposes of punitive damages set forth in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, *Gent v. Collinsville Volkswagen, Inc.* (1983), 116 Ill. App. 3d 496, 451 N.E.2d 1385, and many other cases.

There is no question that the plaintiff had been defrauded in the subject transaction. Just as surely, there is no question that an abuse of the judicial system has occurred.

I respectfully dissent.